UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBYN H.,

Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

Defendant.

CASE NO. C18-0263-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1956.[1] She graduated high school and previously worked as a landscape gardener, stone setter, and painter artist. (AR 43, 68-69.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed a DIB application in January 2014 and an SSI application in February 2014, alleging disability beginning October 1, 2013. (AR 181-91.) The claim was denied initially and on reconsideration.

On February 2, 2016, ALJ Mary Gallagher Dilley held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 35-74.) On September 16, 2016, ALJ Dilley issued a decision finding plaintiff not disabled. (AR 20-29.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 21, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post traumatic accident with spinal surgeries, vertigo, right shoulder[2] degenerative joint disease, and left hand sensory loss severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

---

[2] The parties agree to a scrivener's error in the identification of a severe left shoulder impairment.

ORDER
PAGE - 2

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. § 404.1567(b), 416.967(b), within the following parameters: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to vibration and hazards. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a painter-artist and stone setter.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the absence of right shoulder or left hand limitations in the RFC,

ORDER
PAGE - 3

and in the assessment of medical opinion evidence. She requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Medical Opinions

Plaintiff argues the ALJ erred in considering opinions from treating physician Dr. Robert Wilson and nurse practitioner Catherine Doherty. She also addresses the medical opinion of consultative examining physician Dr. Gary Gaffield.

The Social Security regulations applicable to plaintiff's claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including nurse practitioners, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[3]

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111

---

[3] New regulations, applicable to claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

ORDER
PAGE - 4

(9th Cir. 2012).

Doherty completed a physical medical source statement in February 2014. (AR 312-14.) She opined plaintiff required use of a cane or other assistive device when engaging in occasional standing/walking; could stand/walk and sit up to two hours in a day, with the need to shift positions at will; could frequently lift less than ten pounds and never more weight; could frequently twist, occasionally crouch/squat, rarely stoop/bend or climb stairs, and never climb ladders; and had significant limitations in reaching, handling, and fingering. (AR 312-13.) Plaintiff frequently experienced pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks, could not perform even "low stress" jobs, and would miss more than four days of work per month. (AR 314.) Dr. Wilson signed the February 2014 opinion. (*See id*. and AR 329.)

Dr. Wilson completed and signed a second physical medical source statement in May 2015. (AR 327-29.) He identified symptoms of vertigo, chronic pain in face, head, teeth, shoulders, hands, and chest, and clinical findings and objective signs of numbness in right arm/hand and around hips, unstable gait, and decreased back extension. (AR 327.) Dr. Wilson opined plaintiff could stand/walk and sit up to two hours in an eight-hour workday, with the need to shift between positions at will; could rarely lift up to ten pounds and never lift twenty pounds or more; could rarely twist, stoop/bend, crouch/squat, or climb ladders or stairs; and had significant limitations with reaching, handling, or fingering because her fingers become numb. (AR 328.) Plaintiff had anxiety, her pain or other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks, was incapable of even "low stress" jobs, and would miss more than four days of work per month. (AR 329.)

The record also includes a February 2014 report from chiropractor James Bentz. Bentz

ORDER
PAGE - 5

stated testing showed, *inter alia*, "inflammation due to lack of control of normal cellular signaling in both shoulders, right hip, left elbow and right wrist[,]" and "DNA damage in the cells of the liver." (AR 331.)

Dr. Gaffield provided the only other medical opinion in the record.[4] In May 2016, he opined plaintiff could lift no more than fifty pounds occasionally and twenty-five pounds frequently; had no limitation in standing, walking, or sitting with normal breaks, and required no assistive device; could occasionally perform postural activities; should avoid climbing, scaffolding, traversing irregular surfaces, working at heights, and operating heavy equipment; and had no manipulative restrictions. (AR 28, 389-90.)

Plaintiff asserts Dr. Wilson co-authored the February 2014 opinion with Doherty. She argues the ALJ erred in failing to provide clear and convincing reasons for rejecting the February 2014 and May 2015 treating source opinions or to consider necessary factors pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). She maintains that, in rejecting both the treating source opinions and the opinion of Dr. Gaffield, the ALJ impermissibly relied on her own lay analysis of the raw medical data to formulate the RFC and deny benefits.

The ALJ found plaintiff more limited than assessed by Dr. Gaffield, giving partial weight to his opinion corresponding to medium work, but limiting plaintiff to light work with consideration of the overall medical evidence of record. (AR 29.) Dr. Gaffield's opinion contradicted the opinions of Dr. Wilson and Dougherty, and necessitated the provision of specific and legitimate reasons for rejecting opinion evidence from Dr. Wilson.

The Commissioner argues that, even if Dr. Wilson can be said to have co-authored the

---

[4] Non-examining State agency medical and psychological consultants found insufficient evidence to evaluate the claim in May and October 2014. (AR 89-91, 96-98, 105-06, 114-15.) The ALJ noted they did not have the benefit of subsequent medical records. (AR 29.)

ORDER
PAGE - 6

February 2014 report completed by Dougherty, the ALJ provided sufficient reasons for rejecting both that opinion and Dr. Wilson's May 2015 opinion. The Commissioner also notes that the ALJ appeared to perceive the evidence from "Dr. Dougherty" (AR 27-28) to come from an acceptable medical source. The Court, for the reasons set forth below, finds no error.

The ALJ gave little weight to the February 2014 opinion completed by Dougherty and signed by Dr. Wilson, finding it "not completely consistent with the record." (AR 27-28.) A corresponding emergency room examination and objective images showed only mild findings (AR 305-08, 324) and physical examinations throughout the record showed mostly full strength and normal gait. (AR 28.) Plaintiff's reported activities of typically gardening most of the day, including pulling weeds, raking, and hoeing, were inconsistent with the assessed limitations.

The ALJ also gave little weight to Dr. Wilson's May 2015 opinion, finding it inconsistent with his treatment notes and the overall medical evidence of record. (*Id*.) While noting he had been treating plaintiff for three years, Dr. Wilson indicated the earliest date of her symptoms and limitations was in 1997, when she was run over and crushed by a tractor. (*Id*.; AR 329.) The lifting limitations assessed and referenced unstable gait were inconsistent with Dr. Wilson's July 2015 examination, which showed full strength and normal gait. (AR 340.) His opinion was also inconsistent with the recent consultative examination findings of Dr. Gaffield. (AR 27-29, 377-90.) Dr. Gaffield found generally mild findings on examination, 4/5 strength of the right shoulder, but otherwise 5/5 strength of the upper and lower extremities, and a normal gait. (AR 29, 385, 387-89.) Finally, Dr. Wilson's assessed postural and manipulative limitations were inconsistent with plaintiff's report of regularly spending long hours working in her garden, including pulling weeds, raking, and hoeing.

An ALJ may reject a physician's opinion upon finding it inconsistent with the medical

ORDER
PAGE - 7

evidence, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), the physician's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and/or with the report of another physician, *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999). *See also* 20 C.F.R. §§ 404.1567(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.") An ALJ may also reject a physician's opinion upon finding it inconsistent with a claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599.

Plaintiff rejects the finding of internal inconsistency with Dr. Wilson's own treatment notes, stating physicians do not typically include functional assessments of work-related limitations in office notes. She notes the allegedly inconsistent July 2015 treatment note came after the May 2015 opinion, related to injuries sustained in a July 2015 motor vehicle accident, and indicated plaintiff was "very tender" to palpation on the chest wall and upper back area. (AR 344.) Plaintiff argues the opinions of Dr. Wilson and Dougherty find support in the "underlying, albeit short record." (Dkt. 14 at 14-16 (describing medical records).) She denies any indication she gardens eight hours a day, five days a week, and notes her report to Dr. Gaffield she is uncomfortable sitting for more than thirty minutes and was quite uncomfortable during the examination. (AR 384-85.) Plaintiff points to her testimony of pain with sitting and difficulty

getting dressed six out of seven days a week due to hip pain, as well as her need to lie down about four times a day due to vertigo. (AR 55, 58.)

The ALJ, in considering both the February 2014 and May 2015 medical opinions from Dougherty and Dr. Wilson, rationally found inconsistency with the medical record as a whole and internal inconsistency with Dr. Wilson's own treatment notes. The record shows plaintiff described moderate vertigo dizziness starting the day of a December 2012 emergency room visit, and had normal examination findings, including normal range of motion of extremities and no motor or sensory deficit. (AR 25, 293-94.) While endorsing numerous symptoms in January 2014, plaintiff also reported she used only over-the-counter medication. (AR 26, 315-16.) A February 2014 emergency room visit revealed some tenderness, limited shoulder range of motion, and diminished right hand grip, but normal range of motion of other extremities and no motor or sensory deficit. (AR 26, 306.) A right shoulder x-ray revealed mild joint degenerative change and was otherwise negative. (AR 324.) Plaintiff's next report of joint-related pain came over a year later, in July 2015, to Dr. Wilson. (AR 26, 340-41.) Even then, two months after Dr. Wilson assessed functional limitations falling below the sedentary level and only three weeks after a motor vehicle accident, plaintiff endorsed only left arm pain and tingling in the chest area. While "very tender" on chest wall and upper back area and tender on the left shoulder, she had a normal neurovascular joint examination and grossly intact neurological examination, with normal reflexes, sensation, and motor coordination, and normal gait and strength. (*Id.*).

The ALJ also properly relied on the contradictory findings and opinion from a consultative examining physician and the activities plaintiff reported during that examination. For example, Dr. Gaffield noted diminished sensation in three fingers of plaintiff's left hand, but also intact dexterity, her ability to pick out nickels from quarters and pennies from dimes, no difficulty

completing paperwork or a questionnaire, some limited motion of both of her thumbs that did not impair her grip, and "slight weakness of grip" on the left hand as compared to the right. (AR 388.) (*See also* AR 26-27, 387-89 (describing other findings).) The report also included a detailed description of activities contradictory to the functional limitations assessed by Dougherty and Dr. Wilson:

> She states that she spends almost all of her waking day outside working in her garden, but sometimes the neighbors have to tell her to go in the house when it is dark. She is kneeling, crouching, pulling weeds, raking, hoeing, watering her plants and states that this is what she lives off of. She is currently not relying on medication for her condition. She states that just getting out with nature tends to be the most effective treatment for her conditions.

(AR 385.) With respect to her hands, plaintiff complained of "some numbness, more in the left hand than the right[,]" but that the "the most therapeutic [thing] for her to do is to be out in her garden, picking, pulling weeds, and digging[,]" which "seems to make her hands feel better." (*Id*.) Her daily activities included, *inter alia*, preparing food, reading, watching television, working on her computer, maintaining her home, doing yard work, and gardening:

> Gardening is her hobby, her lifeline. . . . On a typical day she is up at 6:00, has tea, will sit around have something light to eat. She will go for a walk. She then heads outside to her garden. She spends all day long in the garden. She may go in for a snack at lunch. She goes back out to the garden and stays in the garden until dark and comes in and goes to bed.

(AR 385-86.)

Contrary to plaintiff's assertion, the ALJ did not fail to consider Dr. Wilson's status as a treating physician. She described Dr. Wilson as plaintiff's treating physician. (AR 28.) Her decision also reflects consideration of factors pertinent to that status, including the length of the treating relationship and consistency with the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

ORDER
PAGE - 10

Nor does plaintiff demonstrate any other error in the ALJ's consideration of the medical evidence. She points, for example, to the report from Bentz as clearly supporting the opinions of Dr. Wilson. The ALJ stated no lab tests were performed, noted Bentz is not an acceptable medical source, and found no acceptable medical source in the record supported his findings. (AR 28.) Plaintiff contends the ALJ presumably meant to say the record did not contain any of the test results from Bentz, not that he did not conduct any tests. However, while offering an alternative interpretation, the ALJ's interpretation of this and the other medical evidence of record is at least equally rational. It should also be noted that, while the ALJ depicted the evidence from Bentz as an opinion (AR 28), his report did not assign any specific functional limitations. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required to provide reasons to reject physician's statement when statement did not assess any specific limitations or opinions in relation to an ability to work).

In addition, although included within plaintiff's RFC-related assignment of error, plaintiff notes that even Dr. Gaffield found plaintiff capable of only occasional overhead reaching with the right hand due to mild limited range of motion of the right shoulder. (Dkt. 16 at 5; AR 379.) However, as the Commissioner observes, Dr. Gaffield identified this limitation in a form medical source statement. (AR 377-82.) He did not include the limitation in the narrative form following the medical source statement, and, instead, therein opined plaintiff had no restrictions on manipulative activities. (AR 390.) The ALJ reasonably considered the narrative form diagnosis of mild weakness of the right shoulder with slight restricted motion and assessment of no manipulative limitations. (AR 28, 389-90.) *See generally Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

The ALJ, in sum, provided sufficient reasons for rejecting the opinions of Dougherty and

ORDER
PAGE - 11

Dr. Wilson. Her reasons in relation to those opinions and the other medical evidence of record have the support of substantial evidence.

### RFC

Plaintiff avers error in the failure to assess RFC limitations related to her left shoulder degenerative joint disease or her left hand sensory loss, both of which the ALJ found severe at step two. *Valentine v. Commissioner SSA*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."). She describes the origin of her injuries in a 1997 tractor accident and the medical evidence associated with her impairments, notes she is right hand dominant, and identifies error based on the ALJ's own finding of severe shoulder and hand impairments. That is, by finding her shoulder and hand impairments severe, the ALJ necessarily found these conditions resulted in work-related limitations.

Plaintiff avers harm given that the painter-artist and stone setter jobs identified at step four require, respectively, constant reaching, handling, and fingering, and constant reaching and handling and occasional fingering, and are thereby precluded by even a minimal limitation in one of these activities. *See* Dictionary of Occupational Titles (DOT) 144.061-010 (painter-artist) and 700.381-054 (stone setter). Further, if plaintiff is unable to perform her past relevant work, the Medical-Vocational Guidelines direct a finding of disability in light of her age, education, and absence of transferable work skills. (AR 70-71); 20 C.F.R. Pt. 404, Subpt. P, App. 2, 202.06.

The Court finds no error. A step two severity finding does not necessarily imply an impairment will be found to result in functional limitations sufficiently significant to affect the ability of a claimant to perform work activities. *See*, *e.g.*, *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (finding claimant misunderstood purpose of step two in arguing the finding of several new severe impairments on remand necessitated alteration of the RFC); *Bray v. Comm'r*

ORDER
PAGE - 12

*of SSA*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("Bray offers no authority to support the proposition that severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities."); *Griffeth v. Comm'r of Soc. Sec.*, No. 06-1236, 2007 U.S. App. LEXIS 3153 at *8-10 (6th Cir. Feb. 9, 2007) ("The ALJ's finding that the limitation was more than minimal [at step two]. . . was not inherently inconsistent with his finding that the limitation has 'little effect' on the claimant's ability to perform basic work-related activities."); *Shandley v. Astrue*, C11-0349-JLR, 2011 U.S. Dist. LEXIS 143491 at *6-8 (W.D. Wash. Oct. 5, 2011) (citing other unpublished opinions finding same), *adopted by* 2011 U.S. Dist. LEXIS 136355 (Nov. 28, 2011). An understanding of this issue requires consideration of the differences between steps two and four of the sequential evaluation process.

At step two, a claimant must make a threshold showing her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless clams." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54). Therefore, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id*. (quoting SSR 85-28). Adjudicators must exercise "[g]reat care . . . in applying the not severe impairment concept[,]" and, if "unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities," should continue the sequential evaluation process beyond step two. SSR 85-28.

An RFC assessment at step four, on the other hand, considers the most a claimant can do considering her limitations or restrictions. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p. In

other words, "the RFC is meant to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *limited on other grounds as explained by Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-33 (6th Cir. 2004). *See also Buck*, 869 F.3d at 1048-49 ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (internal citation omitted). Indeed, the governing regulation recognizes that a claimant's "impairment(s) and any related symptoms . . . *may* cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a), 416.945(a) (emphasis added).

At step four, the ALJ must identify a claimant's functional limitations or restrictions, and assess her work-related abilities on a function-by-function basis. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p. The ALJ need not include in the RFC assessment, or the corresponding hypothetical to the VE, properly discounted opinion evidence or claimant testimony. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Plaintiff does not demonstrate error in the RFC based solely on the fact the ALJ identified severe shoulder and hand impairments at step two. The ALJ appropriately gave plaintiff the benefit of the doubt at step two and went on to consider her work-related abilities in light of all of her impairments at step four. *See, e.g., Griffeth*, 2007 U.S. App. LEXIS 3153 at *8-10 (this "expanded review" works to a claimant's "benefit, not to his detriment.")

The ALJ also properly considered the medical opinions and other evidence associated with

ORDER
PAGE - 14

plaintiff's shoulder and hand impairments at step four. As discussed above, the ALJ provided specific and legitimate reasons for rejecting the assignment of any greater limitations in functioning opined by treating providers. The ALJ also reasonably found plaintiff more limited than assessed by Dr. Gaffield, while adopting some portions of this physician's opinion, including the absence of any manipulative limitations. She also properly considered plaintiff's reporting of activities inconsistent with manipulative limitations assessed by plaintiff's providers and attested to in plaintiff's testimony. Further, and contrary to plaintiff's contention, the ALJ did assess limitations relevant to plaintiff's shoulder and hand impairments by limiting her to lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, and including various postural and environmental limitations.

The Commissioner argues that, even if the ALJ erred in not including an overhead reaching limitation on the right, as contained in the form completed by Dr. Gaffield, any error was harmless considering both "common knowledge" and the DOT job descriptions. (Dkt. 17 at 11-12.) Plaintiff rejects the Commissioner's lay analysis of overhead reaching in relation to her past relevant work and maintains VE testimony would be required to resolve this issue. However, finding no error in the RFC, the Court finds no need to address harmless error. Also, contrary to plaintiff's suggestion, the Commissioner's argument does not reflect her waiver of error regarding hand-related RFC limitations. The Commissioner, instead, provided a specific argument associated with plaintiff's right arm based on evidence from Dr. Gaffield. For this reason, and for the reasons stated above, the Court also finds substantial evidence support for the RFC assessment and conclusion at step four.

/ / /

/ / /

ORDER
PAGE - 15

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 12th day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge